# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **TRAVIS E. WILLIAMS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:16CV00227 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **DR. SMITH,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Travis E. Williams, Pro Se Plaintiff; Mary Foil Russell, Russell Law Firm, Bristol, Virginia, for Defendant.*

Travis E. Williams, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. Liberally construed, Williams' Complaint alleges that the defendant, a prison doctor, acted with deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment. After review of the record, I conclude that Williams is barred from pursuing his § 1983 claims because he failed to exhaust his administrative remedies before filing this action.

I.

The defendant, Dr. Smith, has filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment, asserting that Williams failed to

exhaust administrative remedies, thus barring his action. Williams has responded to the motion, making it ripe for disposition.

The following facts, taken from the record, are largely undisputed. Williams' claims arise from the course of medical treatment that the defendant, Dr. Smith, provided to him for an injured hand at Red Onion State Prison ("Red Onion"). Dr. Smith examined Williams on August 26, 2015, for an injury to his right hand. Dr. Smith ordered an X ray of the hand and prescribed a pain medication, Naproxen 500, to be taken two times a day for four months. The X ray showed no fracture or dislocation.

On September 20, 2015, Dr. Smith examined Williams for complaints of an injury to his left hand. Dr. Smith noted pain and swelling and ordered an X ray. The X ray showed a fracture of the left third metacarpal with mild displacement, but no dislocation. Dr. Smith discussed the X ray results with Williams at a follow up examination on September 29, 2015. Dr. Smith noted that at that time, the hand was healing, with decreased swelling, and showed a functional range of motion. The doctor explained that one treatment option was to continue the pain medication and an anti-inflammatory, rest the hand, and restrict activities to allow the bone to heal. Williams requested a stronger pain medication, but Dr. Smith elected to leave the prescription for Naproxen in effect.

Dr. Smith did not see Williams again after the September 29, 2015 visit. On October 7, 2015, officials transferred Williams to River North Correctional Center ("River North"), with an order of Naproxen in effect. The Medical Transfer Form completed at Red Onion stated that Williams' current medical problem requiring attention was "ND FX left hand-eczema."[1] Wells Aff. ¶ 9, ECF No. 20-3. The physician at River North reviewed Williams' medications on December 14, 2015, and renewed the prescription for Naproxen. When Williams was transferred from the general population to segregation on March 4, 2016, no physical injuries were noted in his records.

II.

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners

---

[1] During an intake interview that day, Nurse Wells completed an Intra-system Transfer Medical Review of Williams' condition and noted "no obvious trauma [and] no voiced complaints." Id. ¶ 10. Disputing Wells' notes, Williams states that he told Wells about his left hand injury and she said he would be seen by a doctor. Williams also alleges that he continuously complained at River North about severe pain in his hand.

and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Operating Procedure 866.1 is the written administrative remedies procedure that Virginia Department of Corrections inmates must follow to comply with § 1997e(a). Under this procedure, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, normally by completing an informal complaint form and submitting it to prison staff. He should receive a written response on the bottom of the informal complaint form within fifteen days. Then, he can initiate the next step — a regular grievance, with the informal complaint attached.

A regular grievance must be filed within 30 days of the occurrence about which it complains. OP 866.1 provides that if the inmate has been transferred to a different prison facility, he must submit the informal complaint and regular grievance forms to the facility where the grieved issue originated. After investigation of the regular grievance, the warden or his designee will send the inmate a Level I response. If the responding official determines the grievance to

be "unfounded," for full exhaustion, the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III.

If a regular grievance does not meet the filing requirements of OP 866.1, the grievance coordinator will reject the document at intake, mark the reason for the rejection on the back of the form, and return it to the inmate within two days. The inmate can appeal the intake rejection decision to the regional ombudsman. Proper exhaustion, however, requires the inmate to properly file a regular grievance and pursue it through the highest applicable level of appeal within the time limits at each stage.

Williams filed an informal complaint about Dr. Smith's treatment decisions on September 30, 2015, stating:

> A few days ago I was seen by the doctor regarding the x-ray results of my left hand. I was informed that nothing can be done about the broken bone in my hand, however, I believe otherwise. I'm having trouble with my hand and experiencing regular pain, therefore I'm requesting that proper care and re-setting of the broken bone be granted. Thank you.

V.S. App. 1, ECF No. 2. V. Phipps responded on October 17, 2015: "I spoke with Dr. Smith and your hand can't be set because of the way it[']s broken." *Id.*

On October 22, 2015, Williams filed a regular grievance at River North, stating:

> On 9/30/15 while still housed at [Red Onion] I filed a complaint regarding a broken bone in my hand and the [Red Onion]'s medical department's refusal to provide me with proper care and re-setting of

the broken bone. On 10/14/15 [Red Onion]'s medical department responded stating that my hand can't be . . . set because of the way it's broken . . . thus, depriving me of proper medical care. . . .

*Id.* at App. 2. Williams asked to have his hand set.

The River North grievance department stamped Williams' regular grievance as received on October 28, 2015. The response, also dated October 28, advised him that a grievance about something that occurred at Red Onion would have to be submitted to Red Onion.

Williams wrote a second regular grievance on the same issue, dated October 29, 2015, and sent it to Red Onion. The Red Onion grievance officer received and rejected this grievance on November 3, 2015, because the 30-day filing period had expired. The officer also noted: "[Red Onion] does not have your medical records to review, therefore you should see the doctor at [River North] to inquire about treatment. If you are still dissatisfied, file a grievance with [River North]." *Id.* at App. 3.

Williams filed appeals from the intake decisions on both of his regular grievances. The regional ombudsman upheld the reason for rejection of his initial grievance as having been submitted to the wrong institution and also advised Williams that "[y]our issue is a request for medical service" as another reason for rejection of his regular grievance. *Id.* at App. 2. The ombudsman suggested that Williams consult with River North medical staff about treatment for his hand. The

ombudsman rejected the appeal of the October 29 grievance as untimely filed. *Id*. at App. 3.

Dr. Smith asserts that Williams failed to exhaust administrative remedies on his complaints about Dr. Smith's treatment of his hand at Red Onion. I must agree.

Williams has submitted his Verified Statement Form indicating that he exhausted available administrative remedies. The undisputed remedy forms attached to that form, however, demonstrate that he did not properly do so. The evidence is that Williams failed to submit his first regular grievance raising his complaint about Dr. Smith to Red Onion officials as clearly required by the grievance procedure. Instead, he improperly submitted his first grievance at River North. Then, he submitted his second regular grievance to Red Onion outside the 30-day time limit under the procedure. Thus, taking as true the documentary evidence he himself submitted with his Complaint, I can only conclude that Williams did not properly complete the available remedies under OP 866.1.

The defendants bear the burden of proving the affirmative defense that Williams failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). They have done so. Williams could escape summary judgment under § 1997e(a) if he had stated facts showing that the remedies under the established grievance procedure were not

"available" to him. *Ross*, 136 S. Ct. at 1859 (noting that circumstances making prison grievance procedures unavailable "will not often arise"). Generally, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Williams states that he "utilized his due diligence in the matter of exhausting his administrative remedies, and the fact that [he] was transferred to a new facility was out of [his] control." Pl.'s Mem. 6, ECF No. 23-1. However, he fails to present facts showing that his transfer or any other action by officials prevented him from submitting his first regular grievance directly to Red Onion in compliance with OP 866.1.

III.

For the stated reasons, I cannot find that Williams properly exhausted his administrative remedies before filing this action or that the Red Onion grievance procedure was unavailable to him in any respect. Furthermore, I find it clear from the record that Williams no longer has an available administrative remedy regarding Dr. Smith's actions or omissions in September 2015. Accordingly, I will grant Dr. Smith's Motion for Summary Judgment,[2] and dismiss Williams' claims against him with prejudice under 42 U.S.C. § 1997e(a).

---

[2] An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for

A separate Order will be entered herewith.

DATED: May 22, 2017

/s/ James P. Jones
United States District Judge

---

summary judgment, the court must take the non-movant's evidence as true and draw "all justifiable inferences" from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).